In the Matter of DINANATH S. HALYALKAR, Petitioner, v BOARD OF REGENTS OF THE STATE OF NEW YORK et al., Respondents.

Third Department, April 30, 1987

### APPEARANCES OF COUNSEL ˙

*Epstein Becker Borsody & Green, P. C. (Philip M. Gassel, Stephen R. Mills* and *Rhonda J. Falk* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Anne S. Haskell* of counsel), for respondents.

### OPINION OF THE COURT

MAHONEY, P. J.

In May 1975, petitioner immigrated to this country from India and met Upen Patel, an underwriter for New York Life Insurance Company who was also of Indian origin. Thereafter, petitioner became duly licensed to practice medicine in New Jersey, New York and Pennsylvania. Between 1976 and 1979, Patel requested petitioner to perform 10 to 12 physical examinations on his clients for purposes of securing life insurance. Petitioner performed the examinations and Patel assisted in filling out the insurance forms.

In June 1979, petitioner received a notice from the New Jersey Board of Medical Examiners (hereinafter the New Jersey Board) advising him that a complaint had been filed against him for allegedly submitting insurance forms for persons he had not examined. After a hearing, petitioner was served with a formal administrative complaint charging him with nine counts of submitting false certifications in violation of New Jersey law *(see,* NJ Stat Annot § 45:9-1 *et seq.;* § 45:1-14 *et seq.).* Petitioner waived a formal hearing by signing a consent order wherein he pleaded guilty to the charges. As a

result, petitioner's license to practice medicine in New Jersey was suspended for two years with the suspension stayed after three months and petitioner placed on probation.

Thereafter, the Pennsylvania Board of Licensure (hereinafter the Pennsylvania Board) served upon petitioner a citation and order to show cause why his license to practice medicine in that State should not be suspended or revoked in light of the disciplinary action taken against him in New Jersey. After a hearing, it was determined that petitioner had violated the Pennsylvania Medical Practice Act. A letter of reprimand was placed in petitioner's records with the Pennsylvania Board.

On August 28, 1984, the New York State Board of Professional Medical Conduct (hereinafter the New York Board) served a statement of charges upon petitioner alleging that he had engaged in conduct in violation of Education Law § 6509 (2) and (9). An amended statement of charges was later served upon petitioner which added the allegation that he had testified inconsistently in the prior New Jersey and Pennsylvania proceedings.

After a hearing on October 18, 1984 and November 20, 1984, the hearing committee determined that the consent order signed by petitioner in the New Jersey proceeding should not be given collateral estoppel effect as to the charges in New York because he did not have a full and fair opportunity to be heard in the New Jersey proceeding. Further, the hearing committee found that petitioner did not willfully and knowingly submit false insurance forms in New Jersey and that his testimony in the New Jersey and Pennsylvania proceedings was not inconsistent or false. Accordingly, the hearing committee recommended that petitioner's license to practice medicine be continued.

On June 21, 1985, the Commissioner of Health issued a separate recommendation wherein he recommended that the New Jersey consent order be given collateral estoppel effect with respect to the New York charges and that petitioner's license to practice medicine in New York be suspended for two years with execution stayed and petitioner placed on probation. On February 5, 1986, the Regents Review Committee recommended in its report to respondent Board of Regents that the conclusions of the Commissioner of Health be accepted with respect to petitioner's guilt, but that the penalty be modified by suspending petitioner's license to practice

medicine in New York for one year with execution stayed and petitioner placed on probation. On April 2, 1986, respondent Commissioner of Education accepted the recommendations of the Regents Review Committee. Thereafter, petitioner commenced this CPLR article 78 proceeding seeking annulment of the determination of the Commissioner of Education or, in the alternative, modification of the penalty.

We agree with petitioner's contention that in order to sustain the determination finding him guilty of the New York charges, it must be established that he willfully and knowingly submitted false insurance forms. This court has held that the mere making or filing of a false report, without intent or knowledge of the falsity, could not constitute professional misconduct under either Education Law § 6509 (2) or 8 NYCRR 29.1 (b) (6) *(see, Matter of Brestin v Commissioner of Educ. of State of N. Y.,* 116 AD2d 357). Here, petitioner testified before the Pennsylvania Board on March 5, 1981 and before the hearing committee of the New York Board on October 18, 1984 and November 20, 1984. On each occasion, while petitioner admitted that his signature appeared on insurance forms for persons he did not examine, he insisted that he did not knowingly certify an examination he had not performed and that he never intentionally signed a blank form, it being his position that any blank form containing his signature must have been intentionally included among legitimate forms by Patel. Petitioner had testified in like manner at an informal hearing before the New Jersey Board on June 13, 1979.

A review of the record clearly shows that at none of the hearings held in New Jersey, Pennsylvania or New York did petitioner admit to knowingly or intentionally submitting false insurance forms. He not only denies such conduct, but insists that he was deceived into signing blank insurance forms by Patel and that his consent to examine some insurance applicants as a favor to Patel does not establish fraudulent intent on his part. Accordingly, we hold that there was no evidence developed at any of the hearings to establish that petitioner had the knowledge or intent necessary to sustain the charges against him.

Petitioner, however, signed a consent order wherein he pleaded guilty to the charges against him in the New Jersey proceeding. The consent order stated in pertinent part that "[petitioner] having agreed to waive a formal hearing * * * pleads guilty to each count of the administrative complaint".

Petitioner was charged with nine counts of submitting false insurance forms to New York Life in violation of New Jersey Statutes Annotated § 45:1-21 (b) and § 45:9-6. Therefore, if the Commissioner of Education was correct in giving collateral estoppel effect to the New Jersey consent order with respect to the New York charges, the New Jersey consent order would provide a basis for finding that the determination in this proceeding was supported by substantial evidence. Thus, we must examine the collateral estoppel effect of administrative orders between different States.

In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in the prior action or proceeding *(Ryan v New York Tel. Co.,* 62 NY2d 494, 501).

Turning to the first requirement, identity of issue, it is necessary to determine whether, by signing the New Jersey consent order, petitioner pleaded guilty to knowingly or intentionally submitting false insurance forms. In the New Jersey proceeding petitioner was charged, *inter alia,* with conduct in violation of New Jersey Statutes Annotated § 45:1-21, which addresses specific acts of misconduct that provide grounds for license suspension or revocation. The provision with which petitioner was charged states: "A board may * * * suspend or revoke any certificate, registration or license issued by the board upon proof that the applicant or holder of such certificate, registration or license * * * [h]as engaged in the use or employment of dishonesty, fraud, deception, misrepresentation, false promise or false pretense" (NJ Stat Annot § 45:1-21 [b]). Unfortunately, the statute does not state whether the proscribed conduct must be knowing or intentional. While there is a paucity of New Jersey case law construing the above-quoted statute, a New Jersey court in *National Newark & Essex Bank v American Ins. Co.* (76 NJ 64, 385 A2d 1216) interpreted the meaning of the words "dishonest or fraudulent" as they applied to the acts of a bank employee under a bank's fidelity bond. In determining whether the acts of the employee were covered by the bond, the court noted that the words fraudulent and dishonest covered conduct which indicates " 'a reckless, willful and wanton disregard for the interest of the employer' " *(supra,* at 76, at 1222, quoting *London & Lancashire Indem. Co. v People's Natl. Bank &*

*Trust Co.,* 59 F2d 149, 152). Since similar language is used in the New Jersey statute at issue, it is probable that willful conduct was contemplated in New Jersey Statutes Annotated § 45:1-21 (b). Further evidence of such legislative intent can be inferred from the generic definition of fraud. "An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing * * * A false representation * * * by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury" (Black's Law Dictionary 594 [5th ed]).

Against this backdrop, it is pertinent to note that in each of the nine counts of the New Jersey administrative complaint it is alleged that petitioner engaged in the proscribed conduct willfully and knowingly. These allegations must be construed as administrative recognition that knowing and fraudulent intent were essential elements of misconduct under the New Jersey statute. Accordingly, since petitioner pleaded guilty to each count of the administrative complaint when he signed the consent order, he essentially admitted to knowingly and willfully submitting false insurance forms. Therefore, we conclude that there is an identity of issue between the New York and New Jersey proceedings such that the first prong of the test for applying collateral estoppel has been satisfied *(see, Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 71).

We also conclude that the second showing necessary for the application of the doctrine of collateral estoppel has been met. The second prong of the two-part test requires that there has been a full and fair opportunity to be heard in the prior proceeding. The burden rests upon the party opposing collateral estoppel to demonstrate the absence of this requirement *(Ryan v New York Tel. Co.,* 62 NY2d 494, 501, *supra).* Here, it is clear from the record that petitioner was not represented by counsel before the New Jersey Board. However, he did retain counsel thereafter and testified before the hearing committee in the New York proceeding that his attorney advised him against bringing witnesses into the formal hearing because he did not have a chance of succeeding and, further, petitioner told the New York hearing committee that his attorney advised him that it was in his best interest to plead guilty to all of the New Jersey charges. Based upon this advise, petitioner signed the New Jersey consent order.

We must conclude that since the New Jersey administrative

complaint explicitly advised petitioner of his right to plead not guilty to the charges and to undergo a formal hearing, his attorney's advice to plead guilty to the charges was based on his assessment of the merits of the case, in light of petitioner's testimony at the informal hearing as well as a consideration of the penalty that would be imposed under the consent order. The fact that, in retrospect, it may have been wiser for petitioner to have pursued a formal hearing does not render petitioner's representation inadequate. Thus, it is clear that petitioner had a full and fair opportunity to be heard in the New Jersey proceeding and that the second requirement for applying the doctrine of collateral estoppel has been satisfied. Petitioner has failed to sustain the burden imposed upon him. Accordingly, the determination of the Commissioner of Education is supported by substantial evidence insofar as it is based on the New Jersey consent order which was properly given collateral estoppel effect.

Finally, we reject petitioner's contention that the penalty of suspension of his license to practice medicine in New York for one year with execution of the penalty stayed and petitioner placed on probation was an abuse of discretion. We do not find the penalty to be so disproportionate to the offense as to be shocking to one's sense of fairness *(see, Matter of Purdy v Kreisberg,* 47 NY2d 354, 360; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 233).

Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.

Determination confirmed, and petition dismissed, without costs.