OPINION OF THE COURT
Hancock, Jr., J.
Petitioner, a physician, seeks to annul a determination of the Board of Regents finding him guilty of professional misconduct in willfully and knowingly filing false medical examination reports.* The question presented in his appeal is whether the Board of Regents properly invoked the doctrine of collateral estoppel, giving conclusive effect to a consent order in an earlier administrative proceeding before the New Jersey Board of Medical Examiners in which petitioner entered a plea of guilty to similar misconduct and agreed to a three-month suspension. The Appellate Division, where the proceeding was commenced (Education Law § 6510 [5]) held that collateral estoppel had been correctly applied and dismissed the petition. We granted leave to appeal and now reverse.
I
Petitioner, a native of India and educated and trained as a physician in that country, immigrated to the United States in 1975. Thereafter, he completed his residency and became licensed to practice medicine in New Jersey, New York and Pennsylvania. On 10 to 12 separate occasions from 1976 to 1979, at the behest of Upen Patel, a salesman for the New York Life Insurance Company and also an immigrant from India, petitioner performed a physical examination for one of Patel’s Indian clients. Patel had befriended petitioner on his arrival in this country and, with his better command of the language and familiarity with American customs, had been helpful to him in various routine personal and business matters. Patel was present at the examinations and assisted petitioner in filling out the forms for the insurance company. Petitioner has consistently maintained that he never knowingly signed a form for a person whom he had not examined.
On June 13, 1979, at the request of the New Jersey Board of Medical Examiners, petitioner voluntarily appeared at an "informal” hearing in connection with a complaint that he *264 had submitted insurance forms for persons never examined. He was not represented by counsel and was unaware that he was to be questioned under oath. At the hearing, petitioner testified that he had performed the examinations at the request of and as a favor for his friend, Patel, who assisted him in completing the forms. Some of the forms produced at the hearing bore petitioner’s signature but contained information filled in by someone else. It was possible, he conceded, that Patel, without his knowledge, had put before him for signature either blank forms or forms filled out for persons whom he had not examined.
On July 25, 1979 petitioner was served with a formal administrative complaint by the New Jersey Board of Medical Examiners charging him with willfully and knowingly filing nine false certifications for medical examinations not performed. Attached to the complaint was a "Notice of Hearing and Notice to Enter Plea” advising petitioner, among other things, that he had 35 days within which to enter a plea to the charges, that he could "enter a plea by mail”, and that a "plea of guilty or nonvult [would] indicate that [he did] not wish to contest the charges stated, thus rendering unnecessary any hearing in [the] proceeding”. On his lawyer’s advice, he decided not to contest the charges but to accept the penalty provisions which his lawyer had negotiated as a plea bargain. The consent order — which petitioner signed in his lawyer’s office and before him as witness — contained no adjudication or other determination by the Board of Medical Examiners finding petitioner guilty of the misconduct charged in the complaint. The only reference to petitioner’s guilt was the recital of the guilty plea and his agreement to waive a formal hearing. Under the order, petitioner received three months’ active suspension of his license, a direction to make restitution to the insurance company in the amount of $180 for the examination fees it paid to petitioner, and a fine of $2,500.
In February 1981, administrative proceedings were commenced in Pennsylvania based on the suspension of petitioner’s license in New Jersey. Before the Pennsylvania Hearing Examiner, petitioner testified that he had performed all of the medical examinations requested of him by his "good, trusted friend” Patel, and that he had no reason to believe that he was signing anything but the forms of the persons he had examined. He explained that he had agreed to the New Jersey consent order as a plea bargain in view of the expense that would be involved in contesting the charges, the short period *265 of the actual suspension, and his attorney’s promise that his agreement would not result in any punishment beyond what was stipulated in the order. The Hearing Examiner found that petitioner’s misfeasance did "not rise to the level of gross and willful misconduct”. Petitioner was given a private letter of reprimand specifying that it had "no effect on [his] competency to practice medicine in the Commonwealth of Pennsylvania” and that it had been "issued because of a technical violation of the Medical Practice Act”.
On August 28, 1984, approximately five years after the New Jersey proceedings, administrative action arising out of the same matter was commenced against petitioner in New York. The Office of Professional Medical Conduct, relying solely on the New Jersey consent order, maintained that the New York charges should be deemed proven under the doctrine of collateral estoppel. The Hearing Committee (see, Public Health Law § 230 [10]), however, found that petitioner had not had "a full and fair opportunity to be heard and to defend himself’ against the New Jersey charges "due to inadequate advice given to him by his then attorney”. For that reason, the Committee rejected collateral estoppel. Characterizing petitioner’s testimony as "credible and worthy of belief’, it made specific findings that he had not willfully or knowingly submitted false insurance forms and that he had actually performed several of the examinations which he was charged with not performing. The Committee recommended that the charges be dismissed.
The Board of Regents, nevertheless, accepted the contrary recommendations of the Commissioner of Health (see, Public Health Law § 230 [10] [i]) and of its own Review Committee (see, Education Law § 6510 [4] [a], [b]), concluding that collateral estoppel should be applied. Petitioner was found guilty of willfully and knowingly filing false medical reports and, by order of the Commissioner of Education dated April 2, 1986, he received a one-year suspension of his license, stayed subject to the terms of his probation.
In its decision dismissing the petition, the Appellate Division held that its review of the records in the New Jersey, Pennsylvania and New York proceedings showed that no evidence had been "developed at any of the hearings to establish that petitioner had the knowledge or intent necessary to sustain the charges against him” (127 AD2d 346, 349). The court, however, confirmed the determination of profes *266 sional misconduct on the ground that the Board of Regents and the Commissioner of Education had properly applied the doctrine of collateral estoppel. For reasons which follow, we disagree.
II
The Appellate Division, in deciding that preclusive effect was properly given to the New Jersey consent order, held under established rules that the two basic requirements for the application of collateral estoppel had been satisfied: (1) the identicality of an issue necessarily decided in the prior action with one which is decisive of the present action, and (2) that there was a full and fair opportunity to contest the issue in the prior action (see, Gilberg v Barbieri, 53 NY2d 285, 291; Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 71). The court determined that the Office of Professional Medical Conduct had met its burden in showing identicality of the issue and that petitioner had failed to meet his burden of showing that he lacked a full and fair opportunity to contest it in the prior proceeding (see, Kaufman v Lilly & Co., 65 NY2d 449, 456; Ryan v New York Tel. Co., 62 NY2d 494, 501).
Because we conclude that the first requirement — identicality of the issue — was not satisfied, we address only that point. Preliminarily, we observe that the basis for petitioner’s objection to giving preclusive effect to the New Jersey consent order is not that it was entered in a proceeding brought before an administrative tribunal. He does not contend that the New Jersey Board of Medical Examiners acted outside its authority (see, NJ Statutes Annot § 45:9-1 et seq.; § 45:1-14 et seq.; § 45:1-21 [b]; § 45:9-6) or that the New Jersey proceeding was not quasi-judicial in nature and governed by "procedures substantially similar to those used in a court of law” (Ryan v New York Tel. Co., supra, at 499; see, Staatsburg Water Co. v Staatsburg Fire Dist., 72 NY2d 147, 152-153; Clemens v Apple, 65 NY2d 746; Carlisle, Getting a Full Bite of the Apple: When Should the Doctrine of Issue Preclusion Make an Administrative or Arbitral Determination Binding in a Court of Law?, 55 Fordham L Rev 63). Petitioner’s sole objection is that collateral estoppel should not apply to this consent order.
The Appellate Division’s decision that the consent order meets the identicality of issue requirement was based on its legal analysis of the New Jersey charges and their similarity to the corresponding charges in New York. Noting that in *267 each of the nine counts in New Jersey petitioner was alleged to have engaged in the proscribed conduct “willfully and knowingly”, the court held that by pleading guilty to each count he “essentially admitted to knowingly and willfully submitting false insurance forms.” Because the knowing and willful submission of the false forms was the basis of the charges in New York, the court reasoned, the guilty plea was sufficient to establish "an identity of issue between the New York and New Jersey proceedings such that the first prong of the test for applying collateral estoppel ha[d] been satisfied (see, Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 71)” (127 AD2d 346, 351).
Petitioner does not dispute that the issue as framed by the charges in New Jersey was essentially indistinguishable from the issue in the New York proceeding. He argues, however, that this is not sufficient to satisfy the identicality requirement and that it must also appear that the issue was actually litigated and resolved in the prior proceeding. Because the New Jersey suspension was based solely on his plea of guilty in the consent order and without any litigation of the issue of his knowing and willful misconduct or any formal adjudication of his guilt aside from the plea, he maintains that the identicality requirement under Schwartz was not satisfied. Petitioner’s argument finds support in our decision in Kaufman v Lilly & Co. (supra) where, citing Restatement (Second) of Judgments § 27, comments d and e, we recognized the rule that "[i]f the issue has not been litigated, there is no identity of issues between the present action and the prior determination” (65 NY2d 449, 456, supra; see, 5 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 5011.25, 5011.26; Rosenberg, Collateral Estoppel in New York, 44 St. John’s L Rev 173-181).
In Kaufman v Lilly & Co. (supra), a civil action, we declined to apply issue preclusion based upon a liability determination made under the "concerted action” theory against the defendant drug manufacturer in a prior action, because the applicability of the "concerted action” theory had not been challenged and, thus, put in issue in the prior action. We held: "An issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation (see, Restatement [Second] of Judgments § 27, comments d, e, at 255-257; see also, Gilberg v Barbieri, 53 NY2d 285, supra). Because Lilly did not challenge the appropriateness of the concerted action theory in Bichler, it was not actually liti *268 gated and there is no identity between that issue in Bichler and here.” (Kaufman v Lilly & Co., 65 NY2d 449, 456-457 [emphasis added].)
For a question to have been actually litigated so as to satisfy the identicality requirement under Schwartz, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding. The rule is founded on considerations of fairness and recognizes that if preclusive effect were given to issues not truly adjudicated the result would be to discourage compromises and to accord them consequences which the parties neither intended nor foresaw (see, Restatement [Second] of Judgments § 27, comment d; United States v International Bldg. Co., 345 US 502, 505; Tutt v Doby, 459 F2d 1195, 1199; James, Consent Judgments as Collateral Estoppel, 108 U Pa L Rev 173-181; Rosenberg, op. cit, at 173). Application of the rule seems particularly appropriate in the circumstances here, where the judgment sought to be given preclusive effect is a consent order in an administrative proceeding which states, without elaboration, that the party being disciplined entered a plea of guilty. By signing the consent order in response to the "Notice to Enter Plea”, the petitioner simply indicated that he did "not wish to contest the charges stated, thus rendering unnecessary any hearing” and that he wanted to accept the minimal sanction that had been negotiated by counsel. Accordingly, the issue in question was neither argued, conceded nor even addressed in the New Jersey proceeding. It cannot fairly be said, therefore, that the issue was litigated or resolved in that prior action.
Respondents contend, however, that the rationale of Kaufman v Lilly & Co. (supra) is inapposite. Relying on decisions where preclusive effect has been given to guilty pleas in criminal actions (see, e.g., Vavolizza v Krieger, 33 NY2d 351; and Matter of Rubin v Board of Regents, 101 AD2d 970), respondents argue that the same effect should be given to the New Jersey consent order. The critical issue of petitioner’s knowledge and willfulness was raised in the New Jersey complaint, they maintain, and that issue was conclusively determined against him when he signed the consent order pleading guilty to all counts. We disagree.
Collateral estoppel is a doctrine based on general notions of fairness involving a practical inquiry into the realities of the litigation (see, Gilberg v Barbieri, 53 NY2d 285, 291, 292, *269 supra); it should never be rigidly or mechanically applied (see, Staatsburg Water Co. v Staatsburg Fire Dist., 72 NY2d 147, 153, supra; Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 73, supra). Allowing this administrative consent order to have preclusive effect would, in our view, give it an effect neither justified by its language nor the circumstances surrounding its signing, and one which would necessarily disregard the significant differences between the constitutional and other protections guaranteed to a person being prosecuted by the State for commission of a felony or other crime and the administrative procedures pertaining to the suspension or revocation of a professional license (cf., Vavolizza v Krieger, supra).
There is no question that petitioner signed the New Jersey consent order voluntarily and sent it to the State Board of Medical Examiners. His act in signing a negotiated guilty plea in his lawyer’s office, however, can hardly be said to have the significance of a guilty plea made in a formal court proceeding following a thorough allocution establishing that the defendant understands the rights he is waiving and that he has admitted each of the essential elements of the crime charged (see generally, People v Thomas, 68 NY2d 194, 198-199; People v Harris, 61 NY2d 9, 18-20; cf., Vavolizza v Krieger, supra, at 355-356). No such safeguards were afforded petitioner in the New Jersey proceeding. The consent order required no appearance by petitioner before the New Jersey Board of Medical Examiners and no formal admission or acknowledgement of his guilt or waiver of his rights (contrast, Vavolizza v Krieger, 33 NY2d 351, supra; Brennan v Mead, 81 AD2d 821, affd 54 NY2d 811).
Moreover, this is not a case like Vavolizza or Brennan where collateral estoppel was applied defensively to bar the convicted defendant from affirmatively asserting an inconsistent position as plaintiff in a subsequent civil action. Here, the Office of Professional Medical Conduct seeks to use the New Jersey consent order offensively as the sole basis for punishing petitioner in a separate proceeding commenced to revoke or suspend his license in New York despite the lack of any formal adjudication of petitioner’s guilt and notwithstanding a subsequent finding of the Pennsylvania Hearing Examiner, based on sworn testimony, that he was not guilty of any knowing or willful misconduct. While offensive use of collateral estoppel has been permitted (see, e.g., Koch v Consolidated Edison Co., 62 NY2d 548; Guarino v Mine Safety Appli *270 ances Co., 31 AD2d 255, 259 affd on other grounds 25 NY2d 460; see generally, Parklane Hosiery Co. v Shore, 439 US 322), the fact that the doctrine is sought to be employed offensively by a nonparty to the prior litigation may, in some situations, raise legitimate concerns about the fairness of its application (see, Parklane Hosiery Co. v Shore, supra, at 329-332; 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5011.42).
Under the particular circumstances here, we conclude that the issue of petitioner’s guilt of knowing and willful misconduct cannot be said to have been actually litigated in the New Jersey proceeding or determined in the consent order and that, therefore, the necessary identicality of issue was not established (see, Schwartz v Public Adm’r of County of Bronx, supra, at 71). A contrary holding would contravene precedent (see, Kaufman v Lilly & Co., supra, at 456, 457) and the concept of fairness underlying the doctrine of collateral estoppel (see, Gilberg v Barbieri, supra, at 291; Rosenberg, Collateral Estoppel in New York, 44 St John’s L Rev 173-182; Carlisle, Getting a Full Bite of the Apple: When Should the Doctrine of Issue Preclusion Make an Administrative or Arbitral Determination Binding in a Court of Law?, 55 Fordham L Rev 63, 84-94, 99).
The judgment of the Appellate Division should be reversed, with costs, the petition granted, and the determination and order of respondents annulled.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Judgment reversed, etc.

 The sanction imposed was a one-year suspension of petitioner’s license to practice medicine. The suspension was stayed, however, on condition that petitioner abide by the terms of probation.