[824 NE2d 494, 791 NYS2d 63]

In the Matter of Francis G. D'Ambrosio, Appellant, v Department of Health of the State of New York et al., Respondents.

Argued January 4, 2005; decided February 10, 2005

134

### POINTS OF COUNSEL

*Phillips Nizer LLP,* New York City (*Michael J. Silverberg* and *Candice Frost* of counsel), for appellant. I. Appellant's conviction of professional misconduct without evidence, without notice of the charges and without fair opportunity to defend violated established precedent and his constitutional due process rights. (*Matter of McBarnette v Sobol,* 83 NY2d 333.) II. The Appellate Division's construction of the relevant statutes directly conflicts with this Court's decision in *Matter of Halyalkar v Board of Regents of State of N.Y.* (72 NY2d 261 [1988]) and established principles of due process of law. (*Matter of Becker v DeBuono,* 239 AD2d 664; *Matter of Ikramuddin v DeBuono,* 256 AD2d 1039; *Matter of Herberman v Novello,* 280 AD2d 814.) III. Petitioner's conviction without notice of charges or a fair opportunity to defend violated his constitutional due process rights. (*Matter of Hecht v Monaghan,* 307 NY 461; *College Sav. Bank v Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 US 666; *Johnson v Zerbst,* 304 US 458; *Jells v Ohio,* 498 US 1111; *Matter of Murray v Murphy,* 24 NY2d 150; *Matter of Ruffalo,* 390 US 544; *Matter of Shapiro v Board of Regents of Univ. of State of N.Y.,* 16 NY2d 783; *Goldberg v Kelly,* 397 US 254; *Matter of Fitzgerald v Libous,* 44 NY2d 660; *Boddie v Connecticut,* 401 US 371.)

*Eliot Spitzer, Attorney General,* New York City (*Jean Lin, Michelle Aronowitz* and *Mike S. Belohlavek* of counsel), for respondents. I. Education Law § 6530 (9) (d) does not require a finding of guilt of the foreign misconduct charges before a physician may be disciplined in New York. (*Matter of Halyalkar v Board of Regents of State of N.Y.,* 72 NY2d 261; *Matter of Sternberg v Administrative Review Bd. for Professional Med. Conduct,* 235 AD2d 945; *Matter of Hatfield v Department of Health,* 245

AD2d 703; *Matter of Herberman v Novello,* 280 AD2d 814; *Matter of Ikramuddin v DeBuono,* 256 AD2d 1039; *Matter of Khan v New York State Dept. of Health,* 274 AD2d 784; *Matter of Becker v DeBuono,* 239 AD2d 664; *Matter of Storar v Dillon,* 52 NY2d 363.) II. The application of Education Law § 6530 (9) (d) to Francis D'Ambrosio's case comports with due process requirements. (*Matter of Block v Ambach,* 73 NY2d 323; *Matter of Amarnick v Sobol,* 173 AD2d 914; *Matter of Steckmeyer v State Bd. for Professional Med. Conduct,* 295 AD2d 815; *Matter of Taylor v Board of Regents of Univ. of State of N.Y.,* 208 AD2d 1056; *Matter of Shapiro v Board of Regents of Univ. of State of N.Y.,* 16 NY2d 783; *Matter of Murray v Murphy,* 24 NY2d 150; *Matter of Brigham v DeBuono,* 228 AD2d 870; *Matter of Dhabuwala v State Bd. for Professional Med. Conduct,* 225 AD2d 209; *Matter of Schoenbach v DeBuono,* 262 AD2d 820; *Matter of Sasson v Commissioner of Educ.,* 127 AD2d 875.)

### OPINION OF THE COURT

Chief Judge KAYE.

Appellant doctor challenges the discipline imposed on him by the Board for Professional Medical Conduct, based on his voluntary surrender of his license in Nevada, after malpractice charges there. We conclude that the Appellate Division correctly upheld the administrative determination.

### Facts

In 1987, appellant obtained his medical license in New York. He has not been registered as a physician in this state since December 1992, and has never practiced here. From 1993 until 2000, he was an orthopedic surgeon in Las Vegas, Nevada. In 2000, he relocated his practice to California and allowed his Nevada license to lapse. Appellant alleges that at the time he relocated to California, he had no intention of returning to Nevada.

On March 22, 2002, the Nevada Investigative Committee of the Board of Medical Examiners issued a 10-count complaint alleging professional malpractice in appellant's treatment of seven patients between 1995 and 2000. Appellant was charged both with "[c]ontinual failure to exercise the skill or diligence or use the methods ordinarily exercised under the same circumstances by physicians in good standing practicing in the same specialty or field" (Nev Rev Stat 630.306 [7]) and with malpractice as "evidenced by claims settled against a practitioner" (Nev Rev

Stat 630.301 [4]). Nevada law required that a complaint contain a "short and plain statement of the matters asserted"; if requested, "a more definite and detailed statement must be furnished" (Nev Rev Stat 233B.121 [2] [d]).

The complaint identified appellant's seven former patients as "A" through "G." The complaint alleged that following surgery, patient A suffered complications including cauda equina syndrome; that following surgery, patient B suffered extensive edema with ischemia resulting in postoperative quadriparesis and bone graft impingement; and that following surgery and placement of an interior plate in patient E, appellant recommended further surgery for postoperative complications and patient E was later diagnosed as an asymmetrical quadriplegic. For these patients, the complaint set forth the date of surgery, that each patient had filed a medical malpractice action with the Nevada Medical Dental Legal Screening Panel and the case number of each action, that each of these actions had been settled and the settlement amount (patient A: $675,000; patient B: $1,927,000; patient E: $3,500,000).*

For patients C, D and G, the complaint identified the dates of surgery and preoperative diagnosis. For patient F, the complaint identified the date of surgery, preoperative diagnosis, type of surgery performed and resulting complications.

In addition to the opportunity to request a more definite and detailed statement, Nevada law provided that the "[o]pportunity must be afforded all parties to respond and present evidence and argument on all issues involved" (Nev Rev Stat 233B.121 [4]). Appellant made no request for more details and no response to the allegations of the complaint. Instead, on April 17, 2002—under oath in his attorney's office in California—appellant signed a Voluntary Surrender Of License To Practice

---

* Nevada law at the time required that such actions be filed with a screening panel before proceeding to court and that the claimant provide a "clear and concise statement of the facts of the case, showing the persons involved and the dates and circumstances, so far as they are known, of the alleged medical . . . malpractice" (Nev Rev Stat 41A.039 [2], repealed by L 2002 [18th Sp Sess], ch 3, § 69, eff Oct. 1, 2002). The Panel was required to consider all documentary evidence, including the complaint, answer and response, health care records, dental records and records of a hospital or office and the testimony of any expert witnesses and determine from that evidence whether there was a reasonable probability of medical malpractice (id., 41A.049 [2]). If a reasonable probability existed, the patient, doctor and the doctor's insurer had to attend a mandatory settlement conference before a judge to determine the "reasonable value of the claim for purposes of settlement" (id., 41A.059 [1], [5]).

Medicine In The State Of Nevada While Under Investigation (*see* Nev Admin Code, ch 630, § 240). In the document, he acknowledged that he was aware that he was under investigation for violations of the Medical Practice Act, that he "voluntarily, absolutely, and irrevocably surrender[ed] his license to practice medicine in the state of Nevada," and that his surrender was subject to chapter 630, § 240 of the Nevada Administrative Code. Chapter 630, § 240 (1) states that "[i]f the Board accepts the surrender of the license, the surrender is absolute and irrevocable and the Board will notify any agency or person of the surrender and the conditions under which the surrender occurred, as the Board considers advisable."

On June 1, 2002, the Nevada State Board of Medical Examiners "having considered the matter . . . and good cause appearing," issued an order stating "[t]hat the irrevocable surrender of the license to practice medicine in the state of Nevada, while under investigation . . . is accepted." The Board proceeded no further with its disciplinary action.

Shortly thereafter, on September 27, 2002, the New York State Board for Professional Medical Conduct commenced a "referral proceeding" against appellant, alleging that he "violated New York Education Law § 6530 (9) (d) by having surrendered his license . . . after a disciplinary action was instituted by a duly authorized professional disciplinary agency of another state, where the conduct resulting in the surrender . . . would if committed in New York state, constitute professional misconduct under the laws of New York state." The Board further claimed that appellant's conduct resulting in the surrender of his license would constitute misconduct under the laws of New York pursuant to Education Law § 6530 (3) (negligence on more than one occasion); § 6530 (4) (gross negligence); § 6530 (5) (incompetence on more than one occasion); and/or § 6530 (6) (gross incompetence). Public Health Law § 230 (10) (p) required appellant to file a written answer to the charges, and provided that "any charge or allegation not so answered shall be deemed admitted." No written answer is contained in the record.

On December 19, 2002, the Board withdrew the charges of gross negligence and gross incompetence, and a three-member Hearing Committee proceeded with a conference and expedited hearing (*see* Public Health Law § 230 [10] [p]; *see also Matter of Wolkoff v Chassin*, 89 NY2d 250, 252 n [1996]). At the conference, the Administrative Law Judge informed appellant that he was "free to introduce evidence explaining what the reason was

for signing the surrender document, and he [was] free to submit evidence about what he did or did not do with these patients." Appellant moved for dismissal on the ground that the proceeding violated due process and fundamental fairness, which the Administrative Law Judge denied.

At the hearing that followed immediately, the Board submitted the notice of referral proceeding, statement of charges, the Nevada complaint, appellant's voluntary surrender and the Nevada order accepting the surrender. Testifying in his own defense, appellant—in one-word denials—denied knowledge of the substance of the claims made against him, denied that he committed malpractice or did anything negligent in the treatment of the patients listed in the complaint, denied that he could explain how the charges against him were incorrect, denied that the Nevada committee presented facts about his alleged wrongdoing, and denied that anyone explained the charges to him. Asked why he chose to surrender his Nevada license, he explained that, after speaking to his attorney, "rather [than] go to the expense of having to fight and stand before counsels and try to get my point of view across, that the option they gave me was to surrender my license to make everything go away. I wanted to leave Nevada. I never planned on going back. I just wanted it all to end." Appellant stated he "didn't do anything below the standard of care," and that his lawyer had advised him that there would be no collateral consequences resulting from the surrender of his Nevada license.

The Hearing Committee dismissed the professional misconduct charges on the ground that the evidence was insufficient for a finding that, had the alleged conduct occurred in New York, it would constitute any type of professional misconduct here. The five-member Administrative Review Board overturned the Hearing Committee, concluding that appellant surrendered his license to avoid litigation of the charges, that the surrender raised the inference that the charges were meritorious, and that the conduct for which appellant was disciplined would have amounted to professional negligence and incompetence in New York. For a penalty, the Board determined that, should appellant return to New York to practice, "five years on probation, with a monitor and pre-operative review, will allow the State to oversee [appellant's] practice to assure that [he] has corrected the deficiencies in his practice that resulted in his license surrender in Nevada." On CPLR article 78 review, the Appellate Division confirmed the administrative determination. We now affirm.

## Discussion

Appellant contends that the finding of professional misconduct based on his voluntary surrender in Nevada violated the New York statute as well as due process of law. We begin with the statute.

In 1980, the Legislature enacted Education Law § 6509 (5) (b) to define professional misconduct as "[h]aving been found guilty . . . by a duly authorized professional disciplinary agency of another state" of conduct that, if undertaken in New York, would amount to professional misconduct under New York law (L 1980, ch 866, § 4). Physicians who resolved disciplinary charges in other states without actual findings of guilt—whether by surrendering their licenses there, or by consent to sanctions—were thus able to avoid discipline in New York, unless New York could overcome the obvious difficulty of securing records and witnesses and prosecute charges based on out-of-state events.

In 1985, the Legislature added Education Law § 6509 (5) (d) to close that gap by permitting New York's licensing authorities to discipline a professional if, "after a disciplinary action was instituted by a duly authorized professional disciplinary agency of another state" the professional surrendered his or her license or otherwise consented to discipline before any finding of guilt (L 1985, ch 294, § 11). The statute imposed two requirements before a finding of professional misconduct in New York: the voluntary surrender of a license after disciplinary action was instituted by a duly authorized professional disciplinary agency of another state, and the conduct resulting in the surrender that would, if committed in New York, constitute professional malpractice in this state. In 1991, the Legislature consolidated the various existing statutory and regulatory definitions of professional misconduct applicable to physicians in a new article 131-A of the Education Law and imported the language of section 6509 (5) (d) into section 6530 (9) (d) (*see* Assembly Mem in Support, L 1991, ch 606, Bill Jacket, at 21 ["amends Public Health Law section 230, subdivision 1, to refer to definitions of professional misconduct in 6530 and 6531 in the Education Law in lieu of existing definitions in 6509 of the Education Law"]; *see also Matter of Wolkoff v Chassin*, 89 NY2d 250, 252-253 [1996]).

We reject appellant's interpretation of Education Law § 6530 (9) (d) as requiring proof of guilt of the out-of-state misconduct

charges. Plainly, the Legislature enacted Education Law § 6509 (5) (d), from which Education Law § 6530 (9) (d) is derived, in order to close a loophole—in other words, to address precisely the situation before us by subjecting a physician to disciplinary review if (as found by the Administrative Review Board in the case before us) "the physician 'voluntarily' surrendered his or her license in another state to avoid a finding of medical misconduct" (Mem of State Exec Dept, 1985 McKinney's Session Laws of NY, at 3027). Indeed, if appellant were correct—if proof of guilt still were required—the statutory provisions regarding voluntary surrender would add nothing to the disciplinary scheme and would be rendered meaningless.

Appellant misconstrues *Matter of Halyalkar v Board of Regents* (72 NY2d 261 [1988]) when he argues that New York cannot give preclusive effect to an out-of-state disciplinary order accepting a voluntary surrender of license that has not been actually litigated. The issue presented in *Halyalkar* was whether the New York Board of Regents properly invoked the doctrine of collateral estoppel, using settlement of misconduct charges in New Jersey offensively to prove the merits of those charges in a later New York proceeding. We concluded that there was no identity of issue essential to collateral estoppel because misconduct had not been litigated in New Jersey—petitioner had entered a plea. Notably, however, *Halyalkar* was decided on collateral estoppel grounds, did not involve a referral proceeding pursuant to Education Law § 6530 (9) (d), and predated the statutory amendments eliminating a requirement that guilt be proved.

We further reject appellant's contention that his due process rights were violated by the failure of the Nevada complaint to put him on notice of what he had done wrong, and by the failure to provide a full and fair opportunity to defend against those charges in Nevada and New York.

Appellant had both notice and an opportunity to be heard in Nevada. As we observed in *Matter of Block v Ambach*, "in the administrative forum, the charges need only be reasonably specific, in light of all the relevant circumstances, to apprise the party whose rights are being determined of the charges against him and to allow for the preparation of an adequate defense" (73 NY2d 323, 333 [1989] [internal citations omitted]). While a complaint totally devoid of detail would not suffice, the Nevada complaint, though minimal, sufficiently advised appellant of the

charges against him, particularly when coupled with the malpractice action screening and settlement procedures and the statute requiring that a more definite and detailed statement be furnished upon request. Appellant deliberately chose not to avail himself of the opportunity to obtain greater specificity of the charges had he wanted it. Additionally, under Nevada law appellant was afforded the right to a hearing, with full procedural safeguards—all of which he relinquished by his conscious choice to surrender his license, with notice that that act alone might have consequences elsewhere (*see* Nev Admin Code, ch 630, § 240).

Nor was appellant denied due process in New York. The New York statute put appellant on notice that he would be subject to discipline here if he voluntarily surrendered an out-of-state medical license after charges against him for conduct that, if committed here, would constitute professional misconduct under New York law. Due process does not require that appellant additionally be afforded the opportunity to litigate the merits of the Nevada charges here. In a referral proceeding, moreover, the law requires only that a complaint "state the substance of the alleged professional misconduct" and "the material facts but not the evidence by which the charges are to be proved" (Public Health Law § 230 [10] [b]). Here, the Department of Health relied on the Nevada complaint, which alleged that appellant "failed . . . to use reasonable care, skill, or knowledge ordinarily used under similar circumstances, which resulted in . . . malpractice in his treatment of" the identified patients. Under New York law, practicing medicine "with negligence on more than one occasion" and practicing medicine "with incompetence on more than one occasion" constitute professional misconduct (Education Law § 6530 [3], [5]). No reasonable distinction can be made between a failure to use reasonable care resulting in malpractice as alleged in the Nevada complaint and the terms "negligence" and "incompetence" used in the New York statute.

Apart from having received sufficient notice of the charges, appellant had an opportunity at the hearing to offer evidence and explain the nature of his alleged conduct. As in Nevada, appellant chose not to avail himself of the opportunity New York law offered.

Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Judgment affirmed, with costs.