RICHARD T. HOGAN and Another, Respondents, *v.* COMAC SALES, INC., Appellant, Impleaded with JIMMIE JORDAN and Another, Defendants.

Third Department, June 27, 1935.

*Wyman S. Bascom*, for the appellant.

*Edward R. Waite*, for the respondents.

BLISS, J. Jimmie Jordan was a publicity agent. He came to Comac Sales, Inc., the distributor of the Chevrolet automobile at Glens Falls, and offered to have a Chevrolet driven for one hundred consecutive hours without stopping the motor and with advertising displayed upon it. Comac Sales was to furnish the car, gas and oil. Jordan was to receive the revenue from the advertising. The offer was accepted. Jordan then employed the defendant Harley Caswell to do the driving. He gave him full instructions as to the operation of the automobile and told him that if it rained he was to go inside where he could keep out of the rain, to keep the motor running and to keep awake. With suitable fanfare the mayor of the city handcuffed one hand of Caswell to the steering wheel and the peregrination began. The president of Comac Sales, Inc., and Jordan were both present at the handcuffing. After Caswell had driven the car for about twenty hours without stopping the motor and while traversing a dirt road between two highways it began to rain. He noticed an open barn and drove in. After the rain had stopped he started to back out but found that the car did not move. He "rocked" it for two or three minutes by putting it first in low gear and then in reverse, then smelled smoke and shortly after that there was an explosion and fire went all over a hay mow and both the car and barn and contents were burned. Caswell narrowly escaped by picking the lock of the handcuffs with a flat bobby pin. He was the only eye witness to the catastrophe and testified that he did not know what set the barn on fire. The plaintiffs are the owners of the barn and contents. They sued Comac Sales, Inc., Jordan and Caswell in negligence. Comac Sales, Inc., alone defended. Upon the trial there was some proof offered by the plaintiff to the effect that when the motor of a car is accelerated this increase of speed

generally causes sparks of red hot carbon to come out of the exhaust pipe, the inference being that these sparks started the fire.

The court submitted the case to the jury as one of negligence, stating that the issue was whether the appellant was negligent in permitting the use of its automobile by a driver who was shackled to the steering wheel and with the conditions of the test attached. It charged without exception that the driver was neither an employee nor agent of the appellant. The plaintiff had also alleged that the appellant and Jordan were engaged in a joint enterprise, but the court, over plaintiff's exception, charged that the proof did not establish such relationship. The plaintiffs had a verdict and from the judgment entered on this verdict and the order denying appellant's motion to set the verdict aside and grant a new trial, this appeal is taken.

With the holding of the trial court that the driver was not the agent of the appellant, we agree. The proof established conclusively that Caswell was employed by Jordan who agreed to pay him and who gave him all of the instructions as to the manner of operation of the automobile. The appellant had no agreement with Caswell, gave him no instructions and paid him nothing. The plaintiffs may not recover here upon the doctrine of *respondeat superior*. Nor was there any sufficient proof of a joint adventure. There was neither joint control nor sharing of the profits, both of which are requisite elements of a joint adventure.

While the automobile was owned by Comac Sales, Inc., and this fact furnishes *prima facie* evidence of its responsibility for the manner in which it was driven (*Ferris* v. *Sterling*, 214 N. Y. 249), this presumption vanishes in the presence of substantial evidence to the contrary. (*Potts* v. *Pardee*, 220 N. Y. 431.) We may not apply to the appellant the provisions of section 59 of the Vehicle and Traffic Law which makes every owner of a motor vehicle operated upon a public highway responsible for damages to property resulting from negligence in the operation of such motor vehicle by any person legally using or operating the same with the permission, express or implied, of such owner. The damages in this instance were not caused by the operation of the motor vehicle upon the public highway. Hence, this section of the statute does not apply. (*Sylvester* v. *Brockway Motor Truck Corp.*, 232 App. Div. 364.)

The plaintiffs may recover upon the combined negligence of both the owner and the driver; negligence of the owner in permitting its automobile to be operated by one who was so handicapped in the operation as to constitute an unreasonable danger to others and negligence of the driver in the operation of the car.

While an automobile is not *per se* a dangerous instrumentality, so that a recovery might be had here on the ground of mere ownership, nevertheless it has many inherent dangerous propensities. In the hands of an inexperienced, incapable or physically handicapped driver it becomes dangerous and there rests upon its owner a duty to refrain from unreasonably endangering the security of others by permitting his automobile to be operated by such a driver. This disregard of the general security may be the foundation of delictual liability. (*Elliott* v. *Harding*, 107 Ohio St. 501; 140 N. E. 338; 8 Cornell Law Quarterly, 288.) Just as the owner of an automobile may not permit an incompetent or reckless person to operate his car knowing of the incompetency, so likewise an owner may not knowingly permit his car to be operated by one whose control is limited to such an extent that the vehicle when so operated constitutes an unreasonable danger. The owner may not thus passively permit a danger to be created which he should have reasonably foreseen. The owner is liable if he thus unreasonably creates a danger to others. In the instant case this issue was properly left to the jury and it has been resolved against the appellant.

With the negligence thus established we next come to the question of causal relation between such negligence and the damage. It is not required that the owner should have foreseen the particular injury which resulted. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339; American Law Institute, Restatement of Law of Negligence, § 435.) "What constitutes a proximate result is not a problem of philosophy. 'The law solves these problems pragmatically.' (*Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 52.) Fortuitous circumstances may divert the flow of cause to effect from its natural course. New streams of greater volume and force may join the flow. Liability for damages caused by wrong ceases at a point dictated by public policy or common sense. In some situations the courts have established a definite rule of limitation. In others the test is one only of degree." (*Milks* v. *McIver*, 264 N. Y. 267.) The restrictions upon the movements of the driver in the operation of this automobile were such as to influence each of the events which ultimately resulted in respondents' damage. From the moment when he decided to drive into the open barn down to his failure to attempt to extinguish the fire, the effect of such restrictions is apparent. Even in the origin of the fire itself they may be observed. While the jury might not speculate as to such origin, it surely was not unwarranted in inferring that the attempted operation of the car under these conditions was the cause of the fire. In each of these events the original

negligence of the appellant was an actual factor, upon each it had its bearing. Whether such original dereliction of duty contributed as a substantial factor to the resulting damage was a question of fact and the jury's determination should not be disturbed.

The judgment and order should be affirmed, with costs.

HILL, P. J., concurs; McNAMEE, J., concurs in the result; HEFFERNAN, J., dissents, with an opinion; CRAPSER, J., dissents and votes for reversal of the judgment and dismissal of the complaint on the grounds that the relationship between Comac Sales, Inc., and Jimmie Jordan was that of independent contractors.

HEFFERNAN, J. (dissenting). The facts in this case, about which there is very little dispute, are unusual.

In May, 1933, appellant was the Chevrolet distributor in Glens Falls, N. Y. The president of the concern was interviewed by defendant Jordan who represented himself as a publicity agent. As a result of the conference it was agreed that Jordan should operate a Chevrolet car for 100 hours continuously on the streets and public places of Glens Falls, South Glens Falls, Hudson Falls and Fort Edward. The car and the necessary fuel were to be furnished by appellant. Jordan was to have the privilege of selling advertisements to be placed upon the car and was to receive for his personal use the entire revenue therefrom. Appellant contracted for a display sign of its own to be placed upon the car for which it paid Jordan twenty-five dollars. Jordan solicited and obtained advertisements from local business houses and he employed a sign painter who lettered and painted the advertisements on the car.

Jordan engaged defendant Caswell to operate the automobile on the trip and agreed to pay him $100 and one-half of the revenue obtained from the advertisements for his services. Caswell was never in the employ of appellant, and the latter gave him no instructions or directions as to the operation of the car.

On May 23, 1933, at two o'clock in the afternoon, preparations were made for the commencement of the trip. Apparently the event was attended with considerable publicity. The evidence discloses that a crowd collected in front of the Rialto Theatre in Glens Falls, which was the starting point. The mayor of the city was present and it was suggested to him that precautions should be taken so that the operator of the car would be unable to leave the machine during the endurance test. As a result, handcuffs were obtained from the police department of the city and the left wrist of the defendant Caswell was handcuffed to

the steering wheel of the machine. The handcuffs did not in any way interfere with the driver's ability to operate the car. Caswell drove the car over the streets of the communities mentioned without incident from two o'clock in the afternoon of May twenty-third until about nine o'clock in the morning of May twenty-fourth. At that time it commenced to rain. Caswell was then operating the car on a country highway. In order to protect the advertisements on the car he drove into the farm yard of respondents. He observed no one about the premises and drove the car into the barn which had a dirt floor and which was filled with straw and hay. Within a short time the rain ceased and Caswell attempted to back the car out of the barn but was unable to do so. He testified that he rocked the car by putting it into low and then into reverse and continued to do this for two or three minutes. He then said he " smelled smoke, shortly after explosion, fire went all over hay mow, car all burned." As a result of the fire the building, its contents, two stacks of hay and one or two detached buildings, and the car were entirely consumed. The driver freed himself from the handcuffs by the use of a bobby pin, or so he claims, and thus escaped from the burning car.

Plaintiffs instituted this action against appellant, Jordan and Caswell to recover their damages. Defendants Jordan and Caswell did not appear in the action, and after a trial the jury rendered a verdict in plaintiffs' favor against all defendants for the amount of their damages, about which there is no dispute. Comac Sales, Inc., has appealed from that judgment.

The important question in this case, it seems to me, is the character of the agreement between appellant and Jordan. Appellant's counsel strenuously insists that Jordan was an independent contractor and that consequently his client is immune from liability. That contention must be rejected. The very nature of the undertaking between appellant and Jordan excludes the relation of master and servant, of employer and employee, or of principal and agent. Generally speaking, the term " independent contractor " signifies one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen, independently of such employer and free from any superior authority in him to say how the specified work shall be done or what the laborers shall do as it progresses; one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result. (31 C. J. 473.) An independent contractor is one who, exercising an independent

employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of his work. (14 R. C. L. 67.) Obviously the term " independent contractor " contemplates the rendition of services by one person for the benefit of another. In the instant case Jordan was not an employee of appellant. There was no provision in the agreement by which appellant was to compensate him for the rendition of any services. This is always an important element to be taken into consideration in determining whether or not one is an independent contractor.

The learned trial judge correctly charged the jury that defendant Caswell was neither an employee nor an agent of appellant. He explicitly instructed the jury, however, that the arrangement between Jordan and appellant was not a joint enterprise. In that respect it seems to me he erred. He also advised the jury that appellant knew in advance just what it was to receive for furnishing its car and the fuel to run it. It is difficult to understand how appellant could know what benefits it would derive from the advertising. But whether the returns were much or little has no bearing on the character of the agreement existing between appellant and Jordan. Clearly both expected to profit by the venture. Both made contributions. Appellant donated its automobile and the fuel to run it. It did that for the advertising which it was to receive, for the publicity for its Chevrolet car. Jordan contributed his time and efforts for the revenues to be obtained from the advertising. Each expected to derive a profit from his contribution. Clearly the arrangement was a joint adventure, or so a jury might have found. At common law coadventurers in an enterprise were recognized in court only when the element of partnership was disclosed and proof of the essentials of a partnership. This is not the law today. Courts do not treat a joint adventure as identical with a partnership. The relationships created thereby, however, as between the adventurers are governed practically by the same rules that govern partnerships. A joint adventure generally relates to a single transaction. (15 R. C. L. 500.) Speaking of a " joint adventure " (in 33 C. J. 841), it is said: " A joint adventure has been aptly defined as a ' special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.' * * *. A joint adventure as a legal concept is of comparative recent origin. It is purely the creature of our American courts. At common law an enterprise of a limited character, such as is now called a joint adventure, was regarded in law as merely an informal kind of partnership, and the courts made no attempt

to distinguish the one from the other. * * * In the United States the courts, about the middle of the last century, began to find it convenient to draw a distinction between them, and hence there is gradually building up a body of American law applicable to the relation of joint adventure, which may or may not apply to the relation of partners. So far the divergence between the two relations is very slight; so slight in fact that it is generally asserted that they are governed by the same rules of law." To the same effect in *Dexter & Carpenter, Inc.,* v. *Houston* (20 F. [2d] 647).

The learned trial judge also instructed the jury that in order to constitute a joint adventure there must be a sharing of profits and losses. That is a correct statement of the law as to a partnership but not as to a joint venture. Sharing of losses is not an essential. Mere sharing of profits is not sufficient. (*Simpson* v. *Richmond Worsted Spinning Co.,* 128 Me. 22; 145 Atl. 250.) Sharing of profits does not constitute a joint adventure. (*Darling* v. *Buddy,* 318 Mo. 784; 1 S. W. [2d] 163.) Where the existence of the relationship is in issue and there is substantial evidence tending to prove that the parties intended to join their efforts in furtherance of the enterprise for their joint profit the question is pre-eminently one for a jury. (*Van Tine* v. *Hilands,* 131 Fed. 124; *Brady* v. *Colhoun,* 1 Penr. & W. [Pa.] 140; *Hoge* v. *George,* 27 Wyo. 423; 200 P. 96.) If Jordan and appellant were joint adventurers, as I believe they were, then the question of negligence is not important. The driver whom Jordan employed left the highway and entered upon the premises of plaintiffs. In so doing he committed a trespass. His trespass is the proximate cause of the destruction of the building and its contents. The coadventurers are answerable for his acts.

Much is made of the fact that the driver of the car was handcuffed to the wheel. I do not attach any importance to that fact. Certainly it was not a violation of law to operate an automobile in this fashion. A driver of an automobile is only required to have one hand on the wheel. (Vehicle and Traffic Law, § 81, subd. 14.) This operator could use both hands with perfect freedom. One of the provisions of the agreement between appellant and Jordan was that the car should be run continuously for 100 hours on the public highways of the specified municipalities. If the operator of this car had injured someone on the highway after long hours of driving I can readily see that appellant would be answerable in such a case. A reasonable man would be bound to anticipate that a driver might become utterly exhausted in such an undertaking and that consequently he might go to sleep or be unable to concentrate on his work. If he injured someone under such

circumstances a jury might very well find that there was negligence on the part of appellant in permitting its car to be used in such an undertaking. That is not our case here, however. Here the driver left the public highway and violated one of the provisions of the agreement between appellant and Jordan. While the car was off the highway appellant would not be answerable under section 59 of the Vehicle and Traffic Law. (*Sylvester* v. *Brockway Motor Truck Corp.*, 232 App. Div. 364.) Appellant's instructions were that the car should be used on the highways. A violation of these instructions would render it immune from liability. (*Chaika* v. *Vandenberg*, 252 N. Y. 101.)

It does not appear that the act of handcuffing the driver's hand to the steering wheel had any effect on the result. If his hands were unfettered what could he have done? The barn, filled with hay and straw, was on fire, and it seems incredible that the defendant Caswell could have extinguished it. The learned trial judge held that the action was one for negligence.

I am convinced that this cause was tried and submitted to the jury on an erroneous theory and hence I think the judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.

Judgment and order affirmed, with costs.