Fuchsberg, J.
(dissenting). The majority opinion appears to proceed on the assumption that the plaintiffs suit was based essentially on a strict products liability theory alone and, unwilling to carry the promise of Codling and Micaleff to its *482 logical fruition, would deny plaintiff a recovery on that theory.[1] Doing so, however, it ignores the fact that the "first cause of action” — the one pleaded first and charged first— rested on traditional common-law negligence theories, two of which at least were firmly supported by the proof and could well serve as solid foundations for the jury’s verdict.
Indeed, the proof was overwhelming that, to the knowledge of Reed-Prentice, the safety device on the machine it was selling to Plastic Jewel would be rendered completely ineffective before the machine was ever put to use. For, as sold, there was no way in which it could turn out Plastic Jewel’s product unless the hazardous hole was cut into the safety gate.
This was not the first such machine Plastic Jewel had purchased from Reed-Prentice. It was the fourth. Each of the first three had been altered in the identical fashion. Before the purchase of the fateful one, Reed-Prentice’s representative had visited the Plastic Jewel plant, where he observed the machines operating, each with the gaping hole in plain sight. In fact, the contract of sale was negotiated in Plastic Jewel’s factory in full view of the altered, earlier-purchased machines. Conclusively on this point, in a letter to Plastic Jewel, Reed-Prentice had made admissions that the majority recognizes "establishes that the manufacturer knew precisely what its customer was doing to the safety gate”. But that did not inhibit it from making the sale, at its price of $28,000 per machine.
Moreover, pathos was added by proof that Plastic Jewel had made frequent but unavailing entreaties of the manufacturer and its sales and service personnel seeking some modification of the machine that would eliminate the need for piercing the safety gate. As expert testimony revealed, the machine could easily have been made safe for the anticipated use by either of at least two simple modifications. One, at a cost of only $200, would be the installation of "dual hand controls”, which *483 would cause the machine to stop unless both of the operator’s hands were safely occupied pressing buttons spaced widely apart. The second, at a cost of $400 to $500, would, by conversion of the horizontal gate to a vertical one, allow for the extrusion of the product without a dangerously wide aperture.
This array of facts proved the allegations that Reed-Prentice had been negligent "in selling and distributing a machine which [it] knew or should have known to be dangerous, defective and unsafe” as well as "in failing to affix proper and adequate warnings of the dangers”. The law of negligence therefore required no extension to permit a finding of liability: "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation” is right on target (Palsgraf v Long Is. R. R. Co., 248 NY 338, 344). Put another way, "[t]he parameters of the manufacturer’s duties may be said to be whatever is foreseeable by application of due care” (Rheingold, Expanding Liability of the Product Supplier: A Primer, 2 Hofstra L Rev 521, 538).
Under these standards, it cannot be gainsaid that the risk of injury in this case was substantial and even omnipresent as long as the safety gates were known to have been rendered useless. The injury that occurred was then surely foreseeable, and, indeed, was precisely that which the safety gate itself was to have anticipated. That the accident would result in part from the purchaser’s misuse was but a factor to be weighed in ascertaining whether the harm was foreseeable and, hence, whether, given its resources and expertise, the manufacturer acted in a reasonably prudent fashion (see Finnegan v Havir Mfg. Corp., 60 NJ 413, 423; Thompson v Package Mach. Co., 22 Cal App 3d 188, 196; Byrnes v Economic Mach. Co., 41 Mich App 192; Noel, Manufacturer’s Negligence of Design or Directions for Use of a Product, 42 Tenn L Rev 11, 50, 64).
So stated, the manufacturer’s conduct may be considered culpable on either of the two negligence theories proposed by plaintiff:
The first theory sounds in "negligent entrustment”.[2] Liabil *484 ity on this basis is cast upon one who places in another’s hands an instrumentality capable of doing serious harm if misused while knowing or having strong reason to believe that it will be misused to the detriment of others (Restatement, Torts 2d, § 302B, Comment e [E]; see § 390, Comment b; cf. Hogan v Comae Sales, 245 App Div 216, 218-219, affd 271 NY 562; Faller v A. Drive Auto Leasing System, 47 AD2d 530). The principle is hardly new. The situation that typically furnishes its classic illustration is that in which the defendant gives a loaded gun to a young boy who negligently points it at the plaintiff and discharges it (Dixon v Bell, 5 M & S 198 [1816]). Closer to the case today and relying on this same theory is Fredericks v General Motors Corp. (48 Mich App 580), which held that a manufacturer could be liable for injuries suffered by an employee of a small tool and die shop when the manufacturer had reason to know in advance of its entrustment of a die set to the plaintiff’s employer that the latter would use it in an unsafe manner.
In each of these instances the duty of reasonable care is breached when one passively permits a danger to be created by supplying the product to a probably negligent user; the negligence or misuse by the user is considered to be but a foreseeable intervening cause of the injury (see 2 Harper and James, Torts, § 28.2, p 1539; Prosser, Torts [4th ed], § 44, pp 272-275). By the same reasoning, then, Reed-Prentice may properly be held liable in negligence for conveying the molding machine to Plastic Jewel; the rationale applies more forcefully, in fact, because Reed-Prentice had the strongest reason to know of its customer’s intended misuse of the machine (see Smith v Hobart Mfg. Co., 302 F2d 570, 573-575; Anderson v Bushong Pontiac Co., 404 Pa 382).
The second theory propounded by plaintiff is that Reed-Prentice was negligent in failing to warn foreseeable users of the machine such as the plaintiff of the danger posed by the aperture in the safety gate. The underlying premise for liability has been stated as follows: "[0]ne who supplies a chattel for another to use for any purpose is subject to liability for physical harm caused by his failure to exercise reasonable care to give those whom he may expect to use the chattel any information as to the character and condition of the chattel which he possesses, and which he should recognize as necessary to enable them to realize the danger of using it” (Restate *485 ment, Torts 2d, § 388, Comment b; see 37 ATLA LJ 107, esp pp 113-116).
Certainly, Plastic Jewel’s misuse of the safety gate does nothing to diminish Reed-Prentice’s responsibility. Because the misuse was an open and notorious one, the manufacturer knew when it sold the machine that it could not be used for the purchaser’s purpose unless it was modified. Furthermore, it knew exactly how the machine had to be used by employees of Plastic Jewel. For this reason, it does not matter that Plastic Jewel’s misuse may have been in violation of State law (see Suchomajcz v Hummel Chem. Co., 524 F2d 19 [liability imposed on manufacturer of a component part for injuries sustained by remote users under the theory of negligent failure to warn where it supplied chemicals to fabricator of firecracker assembly kits which it knew were being sold in violation of Federal injunction]).
Nor, under the circumstances, could Reed-Prentice rest on the assumption that Plastic Jewel would convey adequate warnings to the users of the machine (see Shell Oil Co. v Gutierrez, 119 Ariz 426; First Nat. Bank v Nor-Am Agrie. Prods., 88 NM 74; Dougherty v Hooker Chem Corp., 540 F2d 174). The employer’s consistent choice of expediency over safety having already been made crystal clear, it would have been pure pollyanna to presume that the necessary safety information would filter down to those who had to work on the machine (see Restatement, Torts 2d, § 388, Comment n; 2 Harper and James, Torts, § 28.7, pp 1548-1549; cf. Bexiga v Havir Mfg. Corp., 60 NJ 402, 410-411).
Cognizant of both the danger and the continued necessity for Plastic Jewel to cut through the safety gate, and given the long-standing and on-going service relationship between manufacturer and purchaser, it turns logic and common sense upside down to say that Reed-Prentice was absolved of any duty to warn employees of the danger to which they were exposed. Nor was Reed-Prentice to be relieved of its duty to use reasonable care in bringing home the danger to users simply because the danger might appear to be an obvious one. Users of such a machine may well be unappreciative of the risk, thinking perhaps, as plaintiff’s expert attested, that the mere presence of a safety gate, even one altered to create a hole, was adequate protection, or that there were other safety devices to prevent hands from getting caught in the machine. Surely the exact nature of the risk and its more subtle *486 aspects, including the possibility of the user’s being drawn into the machine, could well remain unperceived to the inexperienced 17-year-old plaintiff. Precisely because of such considerations, the perception of the danger by the user has generally been thought to be a jury question (Micallef v Miehle Co., Div. of Miehle-Goss Dexter, 39 NY2d 376; Bolm v Triumph Corp., 33 NY2d 151; Codling v Paglia, 32 NY2d 330; Meyer v Gehl Co., 36 NY2d 760, 763 [dissenting opn]; Merced v Auto Pak Co., 533 F2d 71; Noel, Manufacturer’s Negligence of Design or Directions for Use of a Product, 42 Tenn L Rev 11, 58, 64). The issue was therefore properly submitted at trial.[3]
In sum, to premise liability on either a theory of negligent entrustment or negligent failure to warn is not to depart from recognized principles. And, contrary to the alarums sounded by the defendant and third-party defendant, the application of these precepts to the case here certainly cannot be said to forebode a limitless expansion of a manufacturer’s liability for product-related injuries. While, admittedly, a manufacturer is under no obligation to design "a product that is impossible to abuse or one whose safety features may not be circumvented” (pp 480-481), to uphold a jury finding that the manufacturer was negligent in the case before us would herald no such absurdly burdensome standard. Rather, liability may be reasonably circumscribed within the ambit of foreseeability, and the attachment of liability is even clearer in this instance because the manufacturer not only could have foreseen the misuse of its product but actually knew of its occurrence.
Under these circumstances, the majority’s dismissal of the complaint simply cannot be justified by that calculus for legal responsibility long professed by this court. For, "’a balancing of the likelihood of the harm, and the gravity of the harm if it happens, against the burden of the precaution which would be effective to avoid the harm’” would lead, inexorably in my opinion, to a finding of negligence (Micallef v Miehle Co., supra, p 386, quoting 2 Harper and James, Torts, § 28.4; *487 United States v Carroll Towing Co., 159 F2d 169, 173 [Hand, J.]).
Because I conclude that the jury’s verdict was supportable on at least the negligence grounds that were submitted to it, at the very least, upon the court’s reversal of the order of the Appellate Division, a new trial should be ordered (see Clark v Board of Educ., 304 NY 488, 490; Phillipson v Ninno, 233 NY 223, 226).
Judges Jasen, Gabeielli, Jones, Wachtler and Meyer concur with Chief Judge Cooke; Judge Fuchsberg dissents and votes to affirm in a separate opinion.
Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.

. The test of the manufacturer’s liability is whether the use to which the product was put was the intended one or one which by the exercise of due care was reasonably foreseeable. The anticipatable uses, therefore, will dictate the standards of safety to which the product must conform. This suggests that when the manufacturer has actual notice that the product is to be used for a specific purpose somewhat different from its general use, the manufacturer may be held responsible for taking particular safety precautions appropriate for the product’s known use, a matter the further exploration of which, in light of the determination reached by the majority, I leave for another day.

. Epitomizing the court’s instruction in this regard was the exception taken by the defendant’s counsel to the charge that the defendant might be found negligent, if the jury were to find that "the defendant sold the machine, reasonably certain to be dangerous if put to its intended use or could be modified so as to become dangerous, and the defendant knew it”.

. The court’s charge accurately reflected these principles: "even if the defendant complied with the [State] regulations [concerning the safety gate] completely, you may still find the defendant negligent if you find that one, it knew or had reason to anticipate that the plaintiff’s employer would modify or alter the machine to increase one of the risks of harm which the safety device was designed to prevent, and did not give adequate warning of the dangers of such alteration or did not otherwise prevent, if it could reasonably have done so, such alterations from being made after the machine left its factory and its hand.”