Maria PACHO, Plaintiff,

v.

**ENTERPRISE RENT–A–CAR COMPANY, Elrac, Inc., Alberto Garcia and 'John Doe,' Defendants.**

**No. 05 CV 10687(CM).**

United States District Court, S.D. New York.

Aug. 7, 2008.

Dayton Peter Haigney, III, Dayton P. Haigney, New York City, for Plaintiff.

Carolyn Sicuranza Rankin, Peter M. Khrinenko, Brand Glick & Band, P.C., Garden City, NY, Stephanie Lauren Boden, Carman, Callahan & Ingham, LLP, James M. Carman, Farmingdale, NY, for Defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENING IN PART DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Maria Pacho ("Plaintiff") seeks summary judgment on the issue of liability against Defendant Alberto Garcia for injuries suffered during a hit and run car accident. Pacho also seeks to dismiss the affirmative defense of Defendant Enterprise Rent–A–Car Company ("Enterprise") and Defendant Enterprise Leasing & Rent–A–Car, Inc. ("ELRAC"), and to amend the original summons to list ELRAC as a named party.

Garcia, Enterprise and ELRAC (collectively, "Defendants") argue that Pacho has failed to establish a *prima facie* case of liability against Garcia. Additionally, Enterprise and ELRAC filed a cross-motion for summary judgment, arguing that (1) the Graves Amendment to the Federal Transportation Equity Act, 49 USC 30106, preempts the Plaintiff's claims, (2) that Plaintiff has released her claims against ELRAC and Enterprise, (3) Enterprise is not liable to Plaintiff under the New York Vicarious Liability Statute, and (4) ELRAC and Enterprise are entitled to summary judgment on Plaintiff's "negligent entrustment" claim.

For the reasons stated below, Pacho's motion for summary judgment as to Garcia's fault is granted, but because the issue of Plaintiff's contributory negligence must be tried, the court cannot enter judgment in favor of Pacho on the issue of liability. Pacho's motion to dismiss the affirmative defense of Enterprise and ELRAC based on the Graves Amendment is granted. Defendant's cross-motion for summary judgment on the issue of Enterprise and ELRAC's liability is granted in part and denied in part. Pacho's motion to "amend the summons" is denied as moot.

### FACTS

There is no genuine dispute about the following material facts, except where noted.

### A. The Accident

On October 28, 2003, Plaintiff Maria Pacho was struck by a car at the corner of West 176th Street and Audubon Avenue in New York, New York. (Pl. Rule 56.1 Stmt. ¶ 1.) The car that struck Pacho was a White Nissan Maxima bearing New Jersey registration number JDT78H. (*Id.* ¶ 12.) Pacho suffered severe injuries from the accident; she was in a coma and was hospitalized for more than 3 months. (*Id.* ¶ 2.)

Garcia pled guilty to the hit and run. In his plea allocution, he admitted that he was the driver of the car that struck Pacho. (*Id.* ¶ 14.) He has since recanted that version of events and testified under oath that the car was actually stolen from him in the parking lot of a Kentucky Fried Chicken, and that he was not actually the driver. (Garica Dep. ¶¶ 10–14.)

ELRAC, a subsidiary of Enterprise, is the title owner of the vehicle that struck Pacho. (*Id.*) Originally, Pacho was told that the car had been rented from Defendant Enterprise. (*Id.* ¶ 12.) The car was actually rented from ELRAC in Hawthorne on October 28, 2003. (Def. Rule 56.1 Stmt. ¶ 12.)[1] Both Enterprise and ELRAC are incorporated in the state of Delaware. (12/22/05 Notice of Removal ¶ 5.)

### B. Settlement with MVAIC

Because Pacho was unaware of the identity of the driver who hit her, she originally filed a claim with the New York Motor Vehicle Accident Indemnification Corporation (MVAIC), a statutorily created body that compensates victims of hit and run accidents who cannot identify their assailants. *See* N.Y. Ins. Law § 5213(a). MVAIC is funded by contributions from insurance companies doing business in New York. *Id.* § 5203. MVAIC states, "as a condition to the payment of the amount of the settlement the qualified person . . . shall assign his claim to [MVAIC] which shall then be subrogated to all of the rights of the qualified person against the financially irresponsible motorist." *Id.* § 5213(b).

Under the statute, Pacho was entitled to receive $25,000. *See id.* § 5210(a)(1). On March 25, 2004, Pacho settled her claims with MVAIC in exchange for $25,000. (Garcia Rule 56.1 Stmt., Ex. G.)

### C. Garcia's Guilty Plea

On October 19, 2004, the District Attorney informed Pacho's attorney via email that the driver who had struck her was Defendant Alberto Garcia. (Haigney Aff.

---

**1.** In his Rule 56.1 Statement, Garcia states that he was not involved in an accident with Plaintiff on "January 9, 2003." (Garcia Rule 56.1 Stmt. ¶ 1.) Since Plaintiff's Rule 56.1 statement ¶ 1 pertains to the accident on October 28, 2003, it is unclear why Garcia includes this statement.

10/16/07, ¶ 8.) The DA withheld this information during the investigation and prosecution of Garcia for a number of crimes, one of which was the assault charge stemming from the October 28, 2003 accident. (*Id.* ¶¶ 7–13.) On May 27, 2005, Garcia pled guilty to Assault in the First Degree for striking Pacho with his car, and received the maximum sentence of 10 years imprisonment. (*Id.* ¶ 14.)

### D. Passage of the Graves Amendment

Under New York law as it existed at the time of the accident, a lessor of a motor vehicle was vicariously liable for the negligence of his lessee, even in the absence of fault on the part of the lessor. *See Murdza v. Zimmerman,* 99 N.Y.2d 375, 379, 756 N.Y.S.2d 505, 786 N.E.2d 440 (2003). Vehicle and Traffic Law Section 388 governs vicarious liability, and reflected a policy decision to ensure that victims of car accidents involving rented or leased cars could get compensation from a financially responsible defendant. Veh. & Traf. Law § 388 (2007).

Because the $25,000 she had received from MVAIC was insufficient to cover the costs of her injuries, and because she had identified a solvent defendant, Pacho decided to sue Garcia and Enterprise. She first asked permission from MVAIC, offering it a $25,000 lien on any eventual recovery against Garcia and Enterprise in order to repay the statutory funds she had received. (Haigney Aff. 12/22/07 ¶ 4.) MVAIC agreed to this arrangement. (*Id.*)

On July 28, 2005, Pacho's attorney learned that Congress was poised to pass a bill that would preempt Section 388. (Def. Rule 56.1 Stmt. ¶ 29.) This bill, known as the Graves Amendment, expressly preempts state law liability for an owner/lessor based on the torts of his lessee, if such liability is not premised on some fault of the lessor (such as negligent entrustment). 49 U.S.C. § 30106. Sec. 30106 explains:

(a) In General. An Owner of a motor vehicle that rents or leases that vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—

1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and

2) there is no negligence or criminal wrong doing on the part of the owner (or an affiliate of the owner)

The Graves Amendment took effect on August 10, 2005. It specifies that, "this section shall apply with respect to any action commenced on or after the date of enactment of this section without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment." *Id.* § 30106(c).

### E. The Instant Action

On July 29, 2005 plaintiff's attorney filed a "bare" summons with notice with the Court Clerk of New York County. (Pl. Rule 56.1 Stmt., Ex. N.) The summons named Garcia and Enterprise as Defendants. (*Id.*) On November 18, 2005, Pacho filed her complaint. (Pl. Rule 56.1 Stmt., Ex. O.) On November 21, 2005, Pacho filed an amended complaint, adding ELRAC, the title owner of the vehicle Garcia was driving when he struck Pacho. (Pl. Rule 56.1 Stmt., Ex. P.)

Defendants removed this action to federal court on the basis of diversity on

December 20, 2005 (12/22/05 Notice of Removal ¶ 5) and filed an answer on December 23, 2005. (Pl. Rule 56.1 Stmt., Ex. R.)

On October 16, 2007, Plaintiff filed the instant Motion for Summary Judgment, seeking (1) to hold Garcia negligent as a matter of law on the basis of his guilty plea and the doctrine of *res judicata*, (2) to dismiss Enterprise and ELRAC'S Affirmative Defenses, and (3) seeking to amend the original summons to list ELRAC as a named party. (Pl.Mem.Supp.Summ. J.) On December 10, 2007, ELRAC and Enterprise opposed the motion and cross-moved, arguing that the Graves Amendment foreclosed any cause of action against them, and that in any event Pacho had already assigned her claims to MVA-IC. (Enterprise/ELRAC Mem. Opp. Summ. J.) Garcia separately opposed the Motion for Summary Judgment. (Garcia Mem. Opp. Summ. J.)

### F. Procedural History

This case was assigned to me from the late Judge Richard Conway Casey on May 17, 2007. (5/17/07 Order.)

### DISCUSSION

### A. Standard of Review

### 1. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a plaintiff fails to establish an essential element of his claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case nec-

essarily renders all other facts immaterial." *Id.* at 322–33, 106 S.Ct. 2548. On a motion for summary judgment, the court views the record in the light most favorable to the non-movants and resolves all ambiguities and draws all reasonable inferences against the movants. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs,* 834 F.2d 54, 57 (2d Cir.1987).

### 2. Standard for Federal Court Review

This action was commenced in state court; therefore, the Civil Practice Laws and Rules governs certain procedural aspects of the case. *Meridien International Bank v. Government of the Republic of Liberia,* 23 F.Supp.2d 439, 448 (S.D.N.Y. 1998). "This Court must determine how the New York courts would interpret this New York statute." *Keenan v. Jones,* 990 F.Supp. 219, 221 (W.D.N.Y.1998). Where there is a split between state appellate departments, a federal court must determine how the New York Court of Appeals would decide the issue. *Id.*

### B. Liability of Defendant Garcia

### i. Collateral Estoppel Bars Relitigation of the Issue of Garcia's Negligence

Plaintiff argues that summary judgment should be granted in her favor on the issue of Garica's liability, because Garica is collaterally estopped from contesting the issue of his negligence in light of his guilty plea in connection with this accident. Plaintiff is correct.

▆▆▆ The doctrine of collateral estoppel prevents a party from re-litigating an issue when (1) he had a full and fair opportunity to contest (2) the identical issue in a previous proceeding. *Kaufman v. Lilly &*

*Co.,* 65 N.Y.2d 449, 455–56, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985); *Sneddon v. Koeppel Nissan, Inc.,* 46 A.D.3d 869, 849 N.Y.S.2d 287 (2007). The burden is on the party attempting to defeat the application of collateral estoppel to establish that the party has not had a full and fair opportunity to be heard. *Kaufman,* 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 482 N.E.2d 63; *D'Arata v. New York Central Mutual Fire Insurance Company,* 76 N.Y.2d 659, 664, 563 N.Y.S.2d 24, 564 N.E.2d 634 (1990).

■ New York courts generally grant preclusive effect to a criminal conviction, whether by jury verdict or guilty plea, in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case. *United States v. Podell,* 572 F.2d 31, 35 (2d.1978); *Abdel–Whab v. Orthopedic Association of Dutchess,* 415 F.Supp.2d 293, 307 (2006.)

Nonetheless Garcia argues that he should be allowed to litigate the issue of his negligence because he did not have a full and fair opportunity to litigate that issue in his criminal proceedings. (Garcia Mem. Opp. Summ. J. 9.) He is wrong.

■ At his allocution, Garcia was placed under oath. He affirmatively represented that he was pleading guilty voluntarily and that no one, including his lawyer, had threatened or forced him to plead guilty. He was advised of his right to a trial, and all concomitant rights, and indicated that he understood and waived them. He specifically admitted that, on or about October 28, 2003, "under circumstances evincing a depraved indifference to human life, [he] directly engaged in conduct which created a grave risk to another person by striking a pedestrian known to the grand jury with a motor vehicle, and causing serious physical injury to the pedestrian." Asked to describe what he did in his own words, he said, "Someone was hit with a car recklessly. That's the beginning introduction."

Asked if this occurred on October 28, 2003, he said "Yes." Asked who was driving the car, he said, "Alberto Garcia," which is his name. When the prosecutor asked, "When you said Alberto Garcia, you were referring to yourself," he replied, "Yes." And when Judge Tejada said, "Now Mr. Garcia, what you told me, was that the truth?" he responded, "Yes."

At his deposition, Garcia changed his story. He argued that the vehicle was stolen from a Kentucky Fried Chicken parking lot, and that he was not driving the car when it struck Pacho. (*Id.* ¶¶ 10–14.) Garcia testified that he did not want to plead guilty to the assault arising from the hit and run, and that he only did so to secure a favorable plea with respect to other charges he was then facing. (Garcia Dep. ¶ 11.) Garcia also testified that he was insufficiently apprised of the consequences of his guilty plea to assault, including the consequences regarding his civil liability. (*Id.*)

Garcia has never moved to withdraw his plea. Therefore, it has been adjudicated that he drove the car that struck Plaintiff. Garcia allocuted to that conduct under oath, and was adjudicated a felon on the basis of the statements he made to Judge Tejada. He can no more change his story for purposes of this lawsuit than can a party create a genuine issue of fact by filing an affidavit in response to a motion for summary judgment that differs from his deposition testimony. *Palazzo v. Corio,* 232 F.3d 38, (2d. Cir.2000) The judgment of conviction bars Garcia from taking the position that he now tries to espouse.

Garcia argues that his plea was not a "thorough allocution," as required by *Halyalkar v. Board of Regents,* 72 N.Y.2d 261, 269, 532 N.Y.S.2d 85, 527 N.E.2d 1222 (1988). This is nonsense. In *Halyalkar* the plaintiff submitted a consent decree to

a medical board, in which he stated that he did, "not wish to contest the charges stated." *Id.* at 262, 532 N.Y.S.2d 85, 527 N.E.2d 1222. The plaintiff in that case never appeared in court to plead guilty to any charges; he never allocuted. In contrast, here Garcia appeared in court, and was asked by a judge: 1) "Are you pleading guilty to these crimes because you are guilty?"; 2) "Are you pleading guilty voluntarily?"; 3) "Has Your lawyer threatened you or forced you in any way or promised you anything in order to get you to plead guilty?" (Pl. Rule 56.1 Stmt., Ex. J.) Garcia answered first two questions in the affirmative and the third in the negative. Garcia also described what he did, and admitted that he was driving the car that hit the female victim.

By pleading guilty to assault, Garcia admitted that he was the driver. That matter has been finally adjudicated. He is, therefore, precluded from relitigating the issue of whether he was driving the car that hit Pacho. He is also precluded from denying that he acted with "depraved indifference to human life" when he did so.

### ii. The Issue Is Identical

Garcia argues against the application of collateral estoppel because, he asserts, he did not plead to or admit hitting "Maria Pacho." Garcia argues that he only admitted to hitting a female pedestrian, and that the only evidence tying that accident to the Pacho accident is inadmissible.

I reject this argument. In Garcia's allocution, he pled guilty to "striking a pedestrian known to the grand jury with a motor vehicle" "on or about October 28, 2003." (Pl. Rule 56.1 Stmt., Ex. J.) According to contemporaneous police records (which are likely admissible), Garcia was arrested on September 22, 2004, in connection with a hit and run accident that occurred on October 28, 2003, in which the victim was Pacho. (Reply Aff., Ex. F.)

Garcia cannot defeat summary judgment on this issue by suggesting that he hit someone other than Pacho, without identifying who that "someone else" might be. Pacho has adequately connected Garcia's guilty plea to her accident (i.e. to show an "identical issue"), and Garcia has provided nothing but an unsupported assertion to contradict her. (Def.Mem.Opp.Supp. J. 6.)

### 2. Garcia Can Litigate the Issue of Pacho's Contributory Negligence

■ However, Garcia has raised a question of material fact concerning Pacho's contributory negligence. Nothing in his guilty plea precludes a finding of contributory negligence by Pacho. Garcia must be allowed to litigate that issue at trial.

Garcia points to evidence tending to show that Pacho was negligently crossing against a green light when she was struck. The New York City Police Department Complaint # 2003–033–67215 states that a witness, Roberto Garcia, "saw vehicle speeding but had green light." (Pl. Rule 56.1, Ex. D.) A car that has the green light has the right of way, and pedestrians have a duty to refrain from entering the street when a vehicle is so close that it is impractical for the driver to yield. New York Vehicle Traffic Law § 1151(b).

Garcia also points to the Plaintiff's hospital records on intake to show that Pacho was under the influence of narcotics at the time of the accident. Garcia does not include this hospital report among his designated exhibits; however, his Rule 56.1 Statement asserts that Plaintiff had ingested narcotics and that Plaintiff's hospital records include a Toxicology Report, which demonstrates that she had ingested narcotics prior to the accident. (Garcia Rule 56.1 Stmt. ¶¶ 18–19.) Garcia also includes a copy of Pacho's discharge report

from the Addiction Research and Treatment Corporation, which states that Pacho left the program while still under the influence. (Garcia 56.1 Stmt., Ex. A.)

If credited, this evidence raises an issue of material fact about Pacho's contributory negligence.

Pacho seeks to avoid this conclusion by arguing that the Police Reports (including Roberto Garcia's witness statement) and the hospital reports are hearsay. The hospital records are likely admissible under the business records exception, and so are not hearsay. Fed.R.Evid. 803(6). While the police report is hearsay and is not admissible, the hospital records alone raise a genuine issue of fact sufficient to warrant a trial. Moreover, Roberto Garcia may be subpoenaed to testify at the trial.

Because Garcia has pled guilty to recklessly causing Pacho's injuries, he is precluded from contesting the issue of his own negligence. However, viewing the facts in a light most favorable to Garcia, a genuine issue of material fact exists as to the issue of Pacho's contributory negligence. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs*, 834 F.2d 54, 57(2d Cir. 1987). A jury will determine whether Pacho was contributorily negligent, and to what extent.

### C. Liability of ELRAC and Enterprise

### 1. Ms. Pacho has Not Released Her Claims Against ELRAC and Enterprise

■ Defendants' argument that Pacho cannot bring this action because she received $25,000 from MVAIC is rejected.

Defendants argue that, upon the MVAIC payment, all of Pacho's right in the cause of action was assigned to MVAIC, so that by suing defendants now, Pacho is trying "to have her cake and eat it too." (Enterprise/ELRAC Mem. Opp. Summ J. 1–3.)

However, neither Pacho nor MVAIC objectively manifested assent to any assignment. Defendant points to no words, spoken or written, to show this assent. The sole evidence presented is the settlement itself. However, if the parties intended the settlement, by itself, to effect the transfer of Pacho's rights, then presumably Pacho would not have asked MVAIC for permission to sue in her own right—and MVAIC certainly would not have granted it.

Defendants argue that no manifestation of assent is necessary in light of the statutory scheme, which conditions payment from MVAIC on assignment of the claim. N.Y. Ins. Law § 5213(b). As a result of this statute, Defendants contend that no express assignment is required at all, as the assignment was effected "by operation of law" upon Plaintiffs receipt of payment. (Enterprise/ELRAC Mem. Opp. Summ. J. 7.)

The statute reads that assignment of the tort claim is a "condition to the payment of the amount of the settlement." N.Y. Ins. Law § 5213(b). The text does not say that acceptance of payment operates as an assignment by operation of law; neither does it make execution of an assignment a condition precedent to the receipt of payment. Rather, the statute obligates an individual who receives payment to assign her claim to MVAIC, giving MVAIC the enforceable right to obtain such assignment.

This reading of the statute is reflected in *Calhoun, supra,* 514 N.Y.S.2d at 41. The court in that case pointed out that: "plaintiff[ ] settled the negligence action with [MVAIC] for ... the maximum amount permitted by statute. *Thereafter* ...

plaintiff[ ] ... executed ... a general release and an assignment by which all of the ... plaintiff's right, title and interest in her claim for personal injury damages was assigned to MVAIC." *Id.* (emphasis added). If defendants' understanding of the statute were correct, there would have been no need for the Plaintiff in *Calhoun* to execute a general release and assignment. It would have been sufficient that plaintiff received her check for $25,000. Apparently, more is required.

Furthermore, as MVAIC is content to let Plaintiff sue as long as it has a lien on the first $25,000 of any recovery, Defendant really has no standing to complain. The uninsured motorist statute was passed to make some modest amount of compensation available to victims of uninsured vehicles; it is not intended to be a windfall for latterly-located owners of insured vehicles. That would be the precise effect of allowing Enterprise and ELRAC to wiggle out of a suit without regard to the private arrangement between MVAIC and Pacho.

### 2. *Ms. Pacho's Vicarious Liability Claim is Not Preempted by the Graves Amendment*

Enterprise and ELRAC seek summary judgment in light of the Graves amendment. As noted, this amendment had the effect of preempting any state law that imposed vicarious liability to the owner or lessor of a vehicle without regard to fault. 49 U.S.C. § 30106.

#### i. *Pacho's Action was Commenced Prior to the Effective Date of the Graves Amendment*

■ The first issue is whether or not Pacho "commenced" this action prior to August 10, 2005, which the parties agree is the relevant date of enactment.

New York State law determines when the action was commenced. *See Cantor*

*Fitzgerald v. Lutnick,* 313 F.3d 704, 710 (2d. Cir.2002). Under New York state law, an action is commenced by the filing of a summons with notice on the clerk. 2–3 New York Civil Practice: CPLR § 304. Thus, Pacho commenced this action when she served her summons on July 29, 2005, 12 days prior to the effective date of the Graves Amendment.

Defendants argue that this summons was ineffective, as a matter of state law, to commence the action, because it failed to put it on notice as to the nature of the claims against it. Pacho's July 29, 2005 summons read, "Take notice that the nature of this action and the relief sought is to recover damages for personal injuries." (Pl. Rule 56.1 Stmt. Ex. N.)

I reject defendants' argument and conclude that the summons was sufficient to commence the action, as a matter of state law. While it is true that the summons with notice does not specify the date of the incident that gave rise to the lawsuit, use of the words "personal injury" is sufficient to satisfy CPLR § 304's requirement of "notice." *Bergman v. Slater,* 202 A.D.2d 971, 609 N.Y.S.2d 737 (4th Dept.1994); *Pilla v. La Flor De Mayo Express,* 191 A.D.2d 224, 595 N.Y.S.2d 678 (1st Dept. 1993). Further, the summons adheres to the recommended form given by the CPLR. ("The nature of this action is to recover money damages for [*specify*—i.e. breach of contract].") Appendix of Official CPLR Forms, Official Form 4 *Wests' McKinney's Forms* (2007). The provisions of the CPLR are satisfied by using official forms. *Rowell v. Gould,* 124 A.D.2d 995, 508 N.Y.S.2d 794 (4th Dept.1986).

#### ii. *The Amendment of the Complaint Did Not "Commence" a New Action*

■ The next question is whether or not the November 21 amendment of the com-

plaint, which named ELRAC as a party, had the effect of "commencing" a "new action" against ELRAC, so that the claim against ELRAC should be treated as commenced after the effective date of the Graves Amendment. Put otherwise, the issue is whether the joinder of ELRAC in November 2005 relates back to the date the lawsuit was commenced.

Until recently, this presented an open question of New York Law. However, the New York Court of Appeals recently resolved a lower court split on the issue. In *Jones v. Bill*, 10 N.Y.3d 550, 860 N.Y.S.2d 769, 890 N.E.2d 884, 2008 N.Y. Slip Op. 04950 (2008), the Court of Appeals addressed, "whether, for purposes of the federal Graves Amendment (*49 U.S.C. § 30106*), an action is commenced on the date of the initial filing of the summons and complaint, or on the date of joinder of the vehicle lessor." 10 N.Y.3d at 552, 860 N.Y.S.2d at 770, 890 N.E.2d 884. The court concluded "The initial filing date is determinative." (*Id.*)

Consequently, the Graves Amendment affirmative defense asserted by Enterprise and ELRAC is dismissed.

### D. Enterprise is Not Liable to Pacho Under The New York Vicarious Liability Statute

■ Enterprise did not own the vehicle that allegedly harmed Pacho. Therefore, Enterprise cannot be liable to Pacho under New York's vicarious liability statute.

The statute that imposes vicarious liability in New York imposes it on "every owner of a vehicle." N.Y. Veh & Traf. Law § 388. An owner is "[a] person . . . having the property in or title to a vehicle." *Id.* § 128. There is no genuine issue of material fact regarding whether ELRAC or Enterprise had title to or ownership of the vehicle involved in the accident with Pacho. ELRAC was the owner and in possession of the vehicle.

■ Even though ELRAC is a subsidiary of Enterprise, "It is a general principal of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (internal quotation marks omitted). Consequently, Enterprise is entitled to summary judgment dismissing the statutory claim against it.

### E. Amendment of the Original Summons is Unnecessary

Pacho asks that this court authorize amendment of the original summons (the one dated July 29, 2005) to list ELRAC, Inc. as a named party.

Pacho's request is unnecessary. As discussed above, the claim against ELRAC is deemed to have been asserted on the date the original summons was filed. All Pacho had to do was assert her claim against ELRAC—previously sued as a "John Doe"—to add him to the lawsuit, and once that was done he became a party to the action as though he had been sued on July 29, 2005. There is no provision in the CPLR for amending a summons in the manner desired by plaintiff, and there is no need to do so.

Indeed, the summons has already been "deemed amended" by operation of law. Pursuant to CPLR § 1024, a party who is "ignorant, in whole or in part, of the name or identify of a person who may properly be made a party may proceed against such person as an unknown party by designating so much of his name and identity as is known." Here, Pacho originally named as defendants both Enterprise and (in case Enterprise did not turn out to be the

owner) "John Doe." Once plaintiff learned that ELRAC was the title-owner, and added its name to the complaint, the rule provides that "all prior proceedings shall be deemed amended accordingly." *Id.*[2]

Thus, the action against ELRAC was commenced when the summons was filed. ELRAC's addition as a party defendant relates back to July 29, 2005, and the summons (as a "prior proceeding") is deemed amended by operation of law. Plaintiffs motion is unnecessary and granting it would be superfluous.

### F. ELRAC's motion for summary judgment on Pacho's Negligent Entrustment Claim is Denied

At common law, owners could be held liable if they knowingly entrusted their car to an incompetent driver. *Motor Vehicle Accident Indemnification Corporation v. Continental National American Group Company,* 35 N.Y.2d 260, 263, 360 N.Y.S.2d 859, 319 N.E.2d 182 (1974); *Hogan v. Comac Sales,* 245 A.D. 216, 281 N.Y.S. 207 (1935); *Albert v. Guerrero,* 103 Misc.2d 530, 533, 426 N.Y.S.2d 393 (1980). The Restatement explains, "One who supplies . . . a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others" may be liable for negligent entrustment. Restatement (Second) of Torts § 390.

New York law requires the possession of a driver's license to operate a motor vehicle on public roadways. N.Y. Veh. & Traf. § 509. An entity can be held liable for

knowingly allowing an unlicensed driver to operate a vehicle. *Id.*

In this case, Garcia testified at his deposition that he did not possess a driver's license and that Enterprise Rent–A–Car never asked him to present identification or a driver's license. (Garcia Dep. ¶¶ 28, 64–67.) Although ELRAC asserts that Garcia presented a facially valid District of Columbia-issued Driver's license (Enterprise/ELRAC Rule 56, 1, Ex. B.), ELRAC has not produced a copy of that license. There is at the very least a disputed issue of fact concerning ELRAC's negligence in failing to obtain a license from Garcia before entrusting a vehicle to him.

### G Enterprise's Motion for Summary Judgment Is Granted

The question is whether any common law claim lies against Enterprise. As noted above, Enterprise, which did not own the car, cannot be held liable for the negligence of its subsidiary under the applicable state statute. The same is true at common law. "As a general rule, a parent corporation will not be liable for the torts of its subsidiary corporation, notwithstanding the former's complete ownership of the latter's stock." 2–38 Warren's Negligence in the New York Courts § 38.02. New York Courts required a plaintiff to demonstrate that the parent corporation exerted control over the subsidiary to find the parent corporation liable for torts of its subsidiary. *See Billy v. Consolidated Machine Tool Corp.,* 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980). No

---

**2.** Of course, a party must use genuine efforts to learn the identity of an unknown party. *Rogers v. Dunkirk Aviation Sales,* 31 A.D.3d 1119, 818 N.Y.S.2d 717 (4th Dept.2006). The supporting affidavit of Haigney avers that the affirmant "commenced a diligent effort to as-

certain the registration number of the vehicle involved in the accident." (10/16/07 Haigney Affidavit.) Emails and phone notes in support of these efforts are also provided. (Pl. Rule 56.1 Stmt., Ex. E.)

such showing has been made by plaintiff here.

However, a party that does not own a vehicle can be held liable for negligent entrustment if that party "had control" over the vehicle. *Bennett v. Geblein,* 71 A.D.2d 96, 421 N.Y.S.2d 487 (1979). The question is whether plaintiff has adduced any evidence tending to show that Enterprise had control over the ELRAC-owned car.

The only relevant evidence appears to be that Enterprise did not provide ELRAC with any sort of written procedures to follow when leasing cars under its trademark. (Donaghey Dep., Enterprise/ELRAC Ex. M). Plaintiff has not raised a genuine issue of fact concerning Enterprise's control over the vehicle. Enterprise's motion for summary judgment must, therefore, be granted. This constitutes the decision and order of the court.